# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

_____

THOMAS ATCHISON, as Personal
Representative of the Estate of
MICHAEL ATCHISON, deceased,

        Plaintiff,

v.                                                                    No. CV 15-00039 WJ/SCY

CORRECTIONAL HEALTHCARE
COMPANIES, INC., BERNALILLIO COUNTY
BOARD OF COUNTY COMMISSIONERS,
KRISTI DOWNING, ANDREW DUNBAR, MARISSA
GARCIA, KAAKI GARNER, DAVID HERRERA, and
CONSUELO MARTINEZ,

        Defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I AND DEFENDANTS' PARTIAL MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS III, IV, V, AND VII

THIS MATTER comes before the Court upon Defendants David Herrera and Kristi

Downing's Partial Motion for Judgment on the Pleadings as to Count I (**Doc. 44**) and Partial

Motion for Judgment on the Pleadings as to Counts III, IV, V, and VII (**Doc. 54**). Having

considered the parties' written arguments and the applicable law, the Court finds that

Defendants' Motions are not well-taken and, therefore, are **DENIED**.

### BACKGROUND

On November 7, 2013, between 12:00pm and 1:00pm, a Bernalillo County Sheriff's

Deputy arrested Michael Atchison ("Mr. Atchison") after finding a gram of methamphetamine in his vehicle. The Deputy transported Mr. Atchison to Albuquerque/Bernalillo County Prisoner Transport Center ("PTC"). En route to the PTC, Mr. Atchison swallowed a quantity of methamphetamine that had not been confiscated during his arrest. Mr. Atchison remained in a holding cell at the PTC for approximately two hours, where he allegedly began to show symptoms of a drug overdose. Mr. Atchison was then transported from the PTC to the Bernalillo County Metropolitan Detention Center ("MDC"). Defendant Correctional Healthcare Companies, Inc. ("CHC") contracts with Bernalillo County to provide medical and mental health services at the MDC and PTC. Each of the remaining individual Defendants in the case are alleged to be employed by CHC, with the exception of Defendant Consuelo Martinez, who is employed by Bernalillo County.

When Mr. Atchison arrived at the MDC, he was found on the floor of the transport van and could not move from the van into the jail by his own volition. Mr. Atchison was placed on the floor of the LEA[1] area so that he would not injure himself by falling off of a seat. Plaintiff alleges that MDC staff knew shortly after Mr. Atchison's arrival that he was physically ill due to the ingestion of a substance.

At approximately 5:30pm, Mr. Atchison was taken to a "MED3" office where Defendant David Herrera ("Mr. Herrera"), a paramedic on the day shift, spoke with him. Mr. Atchison was sweating profusely and was non-responsive to Mr. Herrera's questions. At approximately the same time, Plaintiff alleges that Defendant Kristi Downing ("Ms. Downing"), a registered nurse, learned that it was suspected that Mr. Atchison had ingested an unknown quantity of a drug and that he was not cooperating with medical staff. Mr. Herrera took Mr. Atchison's vitals, which revealed that he was tachycardic. Mr. Atchison was unable to support himself to have his

---

[1] Plaintiff does not define what the "LEA area" is in his Complaint.

2

booking photograph taken, had difficulty opening his eyes for the camera, and had to be propped

up by corrections officers. Mr. Herrera then briefed Defendant Kaaki Garner ("Ms. Garner"), a

registered nurse who worked the night shift, and Defendant Marissa Garcia ("Ms. Garcia"), an

Emergency Medical Technician who worked the swing shift, about Mr. Atchison's condition

before finishing his shift around 6:00pm.

Defendant Andrew Dunbar ("Mr. Dunbar"), a registered nurse working the night shift,

learned of Mr. Atchison's condition shortly after arriving for his shift at approximately 6:00pm.

Plaintiff alleges that Mr. Dunbar did not personally check on Mr. Atchison or communicate with

other staff members about his condition. Plaintiff further alleges that many of MDC's corrections

officers perceived Mr. Atchison's symptoms of drug intoxication to be worse than any inmate

previously booked into the MDC.

At approximately 1:10am on November 8, 2014, an MDC corrections officer looked in to

Mr. Atchison's cell and requested that CHC medical staff respond. Ms. Garcia and Ms. Garner

responded, evaluating Mr. Atchison for approximately three minutes before leaving the cell

without rendering aid. Minutes later, an MDC corrections officer determined that Mr. Atchison

was not breathing and called a "Code Blue." Mr. Atchison was subsequently pronounced dead at

the MDC.

Plaintiff alleges that Ms. Downing and Mr. Herrera, the day shift staff, did not personally

check on Mr. Atchison, made no effort to transport him to the hospital, and made little or no

effort to communicate with other CHC staff about his condition. Plaintiff alleges that Mr.

Dunbar, Ms. Garner, and Ms. Garcia, the night shift staff, only personally checked on Mr.

Atchison once. Despite obvious signs of serious illness and distress requiring urgent attention,

CHC made personal contact with him only twice, for a total of ten minutes, and provided no

medical treatment to him whatsoever.

Plaintiff brings seven counts against the Defendants: Count I: Eighth and Fourteenth Amendment claims against each individual CHC Defendant; Count II: Eighth and Fourteenth Amendment claims against CHC; Count III: ordinary negligence against each individual CHC Defendant; Count IV: medical negligence against each individual CHC Defendant; Count V: punitive damages against all CHC defendants; Count VI: negligence against the MDC defendant, Mr. Martinez; and Count VII: loss of chance against all Defendants.

Plaintiff filed this case in the Second Judicial District Court in the County of Bernalillo, New Mexico. Defendants timely removed the case to this Court on January 13, 2015. Defendants Mr. Herrera and Ms. Downing filed a Partial Motion for Judgment on the Pleadings as to Count I (**Doc. 44**), on November 6, 2015. Plaintiff filed a Response (**Doc. 52**) on December 4, 2015. Defendants filed their Reply (**Doc. 57**) on December 23, 2015. Defendants Mr. Herrera and Ms. Downing subsequently filed a Partial Motion for Judgment on the Pleadings as to Counts III, IV, V, and VII (**Doc. 54**) on December 9, 2015. Plaintiff filed a Response (**Doc. 61**) on January 15, 2016. Defendants filed their Reply (**Doc. 65**) on January 29, 2016.

**LEGAL STANDARD**

While Defendants have titled their Motions as a Motion for Judgment on the Pleadings under Rule 12(c), their Standard of Review discusses evaluating a Motion to Dismiss for failure to state a claim under Rule 12(b)(6). Regardless, in the Tenth Circuit, a motion under Rule 12(c) is generally treated in the same manner as a Rule 12(b)(6) motion to dismiss. *See Mock v. T.G.&Y Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992). Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a case for failure to state a claim upon which relief can be granted. Rule 8(a)(2), in turn, requires a complaint to contain "a short and plain statement of the

claim showing that the pleader is entitled to relief." Thus, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Although a court must accept all the complaint's factual

allegations as true, the same is not true of legal conclusions. *See id.* Mere "labels and

conclusions" or "formulaic recitation[s] of the elements of a cause of action" will not suffice.

*Twombly*, 550 U.S. at 555. "Thus, in ruling on a motion to dismiss, a court should disregard all

conclusory statements of law and consider whether the remaining specific factual allegations, if

assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v.*

*Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011).

### DISCUSSION

### I.      Motion for Judgment on the Pleadings as to Count I (Doc. 44)

Count I of Plaintiff's First Amended Complaint alleges Eighth and Fourteenth

Amendment claims against the individual CHC Defendants. Plaintiff specifically alleges that Ms.

Downing and Mr. Herrera owed a constitutional duty to provide adequate medical care to Mr.

Atchison. Ms. Downing's and Mr. Herrera's deliberate, reckless, and conscious ignorance of Mr.

Atchison's serious medical needs amounted to deliberate indifference to his right to receive

adequate medical care while incarcerated. Defendants argue that Plaintiff has failed to allege that

Ms. Downing and Mr. Herrera were deliberately indifferent to Mr. Atchison, and therefore,

Count I of the Complaint must be dismissed. *See Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir.

2006). As Mr. Atchison arrived at the MDC at 5:30pm, and the day shift ended at 6:00pm,

Plaintiff can only state a claim for deliberate indifference if he alleges facts that would indicate

that Mr. Atchison was suffering from obvious signs of a medical emergency prior to 6:00pm,

that Mr. Herrera and Ms. Downing were aware of these obvious signs, and that they failed to

take any action in response.

As to Ms. Downing, Defendants argue that the Complaint only indicates that Ms.

Downing found out around 5:30pm that Mr. Atchison had ingested an unknown quantity of an

unknown drug, and that he was uncooperative. There is nothing to indicate that Ms. Downing

knew that Mr. Atchison was suffering from a potential fatal overdose of methamphetamine.

Stating a claim for deliberate indifference requires showing "actual knowledge of the specific

risk of harm to the detainee . . . or that the risk was so substantial or pervasive that knowledge

can be inferred." *Estate of Hocker by Hocker v. Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994).

Defendants argue that Ms. Downing's knowledge was rudimentary and non-specific, and there

are no facts to indicate that Ms. Downing even saw Mr. Atchison before the end of her shift. In

*Hutto v. Davis*, an inmate swallowed a bag of methamphetamine and subsequently died. *See* 972

F. Supp. 1372, 1374–76 (W.D. Okla. 1997). The court granted summary judgment to jail staff

who had contact with the decedent during the booking process, despite the fact that information

obtained at admission suggested that the decedent swallowed illegal drugs before arriving at the

jail. *See id*. Defendants conclude that Ms. Downing's general awareness of Mr. Atchison's

intoxication did not amount to a specific awareness of risk, and therefore, Plaintiff's claim

against Ms. Downing as to Count I must be denied.

Similarly, Defendants argue that Plaintiff has not stated a deliberate indifference claim

against Mr. Herrera. There are three circumstances in which deliberate indifference can be

found: "[f]irst, a doctor may recognize an inability to treat a patient because of the seriousness of

the medical condition and lack of expertise, but decline or unnecessarily delay a referral. Second,

a doctor may fail to treat a medical condition so obvious that even a layman would recognize the

condition. Finally, a doctor could completely deny care even though he observes recognizable symptoms which could signal a medical emergency." *Heidtke v. Corrections Corp. of America*, 489 Fed. App'x 275, 280 (10th Cir. 2012) (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)). Plaintiff's sole allegations against Mr. Herrera were that he examined Mr. Atchison, determined that he was tachycardic, sweaty, and non-responsive to questions, and then informed the medical staff who replaced him as to Mr. Atchison's condition. As to the first circumstance, Defendants argue that there are no facts to indicate that Mr. Herrera recognized an inability to treat Mr. Atchison, but delayed a referral, as he referred Mr. Atchison to other medical staff shortly after examining him. Second, there is no indication that Mr. Herrera failed to treat a medical condition so obvious that a layman would recognize the condition, as his symptoms would not have made it obvious that Mr. Atchison had ingested a lethal dose of methamphetamine. Third, Mr. Herrera completed his intake examination, determined that Mr. Atchison's symptoms did not indicate a medical emergency, and then informed other medical staff regarding his condition.

Thus, Defendants conclude that neither Ms. Downing nor Mr. Herrera violated Mr. Atchison's clearly established right to medical care. Accordingly, Defendants argue that they are protected by qualified immunity and Plaintiff's claim must be dismissed.

Plaintiff argues that in order to state a claim for medical indifference, Plaintiff's Complaint must plausibly allege that Mr. Atchison experienced a medical need that would be "obvious to a layperson" and that the medical provider knowingly disregarded an "excessive risk" to his health. *See Garrett v. Stratman*, 254 F.3d 946, 949–50 (10th Cir. 2001). Plaintiff alleges the Complaint contains specific factual allegations making the claim plausible: Mr. Atchison was placed on the floor so he would not injure himself by falling off a seat; Mr.

Atchison could not support himself while the booking photograph was taken and had difficulty

opening his eyes; corrections officers perceived him to be in a worse state than other inmates

under the influence of drugs; Mr. Atchison was non-responsive to Mr. Herrera's questions and

his vitals revealed that he was tachycardic; and Ms. Downing learned that he was suspected to

have ingested an unknown drug. Thus, it is plainly plausible that Mr. Atchison's medical needs

were obvious and that Mr. Herrera and Ms. Downing, who were on shift when Mr. Atchison was

first brought to the facility, knowingly disregarded the excessive risk to his health by failing to

ensure that he received emergency medical treatment. Plaintiff concedes that Defendants'

Motion raises many of the defenses that will be available to Ms. Downing and Mr. Herrera as the

case proceeds: that they were not on shift long enough for liability to attach, that they did not

know of a sufficiently "specific" risk of harm, and that Mr. Atchison's symptoms did not

indicate a medical emergency. However, the availability of such defenses is not a basis for

dismissing the Complaint. Plaintiff also distinguishes Defendants' reliance on *Hocker* and *Hutto*.

Both cases arose in the summary judgment context, and thus, do not stand for the proposition

that a party must identify a specific harm in the complaint in order to survive a Rule 12(b)(6)

motion. Given the facts Plaintiff has plead, Plaintiff argues that there is not a sufficient basis for

dismissal of Count I of the Complaint as to Ms. Downing and Mr. Herrera.

Plaintiff turns next to qualified immunity, which Defendants assert they are entitled to in

their Motion. Plaintiff argues that Defendants are not entitled to qualified immunity because it is

well-established that prison medical contractors are not entitled to qualified immunity. Every

federal appellate court that has addressed the question has held that private medical contractors

working at jails and prisons are not entitled to qualified immunity. *See Harrison v. Ash*, 539 F.3d

510, 521–25 (6th Cir. 2008); *Jensen v. Lane County*, 222 F.3d 570, 580 (9th Cir. 2000);

*Richardson v. McKnight*, 521 U.S. 399 (1997); *Currie v. Chhabra*, 728 F.3d 626 (7th Cir. 2013).

In their Reply, Defendants push back against Plaintiff's assertion that they are not entitled

to qualified immunity. Defendants focus on *Filarksy v. Delia*, 132 S. Ct. 1657 (2012) for the

proposition that in the case of professionals with specialized knowledge, the public policy

rationale behind qualified immunity is particularly strong. *See id*. at 1665–66. Defendants argue

that *Richardson*, the only Supreme Court case cited by Plaintiff, was to be applied narrowly "in

the context in which it arose." 521 U.S. 399, 400. *Richardson* involved guards at a private prison

employed by a private corporation, and thus, Defendants' allege, is not applicable to CHC. In

this case, Defendants are employed by a corporation that provides medical care at a correctional

institution that is managed by Bernalillo County. Defendants conclude that as Bernalillo County

has substantially greater control over CHC's medical practice than in *Richardson*, CHC

employees are protected by qualified immunity.

The Court finds that Plaintiff has plead sufficient facts to make a plausible claim that Ms.

Downing and Mr. Herrera were deliberately indifferent to Mr. Atchison's medical needs.  Ms.

Downing knew that Mr. Atchison had ingested an unknown quantity of an unknown drug and

knew that he was non-responsive to Mr. Herrera's questions. Defendants argue that Ms.

Downing's knowledge was rudimentary and non-specific, citing *Estate of Hocker by Hocker v.*

*Walsh*, 22 F.3d 995, 1000 (10th Cir. 1994). However, as Plaintiff notes, *Hocker* arose in the

summary judgment context and did not involve an allegation, which must be accepted as true at

this stage, that Ms. Downing knew that Mr. Atchison was exhibiting obvious signs of a

substantial risk of harm. Plaintiff has alleged that Ms. Downing learned that Mr. Atchison was

suspected to have ingested an unknown quantity of an unknown drug and that he was

uncooperative in response to Mr. Herrera's questions. As Plaintiff notes, Ms. Downing may

ultimately prevail on the defense that she did not know of a sufficiently "specific" risk of harm to

Mr. Atchison. However, Plaintiff does not need to allege facts so detailed as to obviate all

possible defenses. Viewed in the light most favorable to Plaintiff, the Court finds that Plaintiff

has plausibly alleged that Ms. Downing had actual knowledge of a specific risk of harm to Mr.

Atchison and failed to ensure that he was transported to a hospital to receive treatment.

Turning to Mr. Herrera, whether Plaintiff's Complaint has plausibly alleged that he can

be held liable for deliberate indifference hinges on the three circumstances from *Heidtke v.*

*Corrections Corp. of America*: (1) a doctor may recognize an inability to treat a patient because

of the seriousness of the medical condition and lack of expertise, but decline or unnecessarily

delay a referral; (2) a doctor may fail to treat a medical condition so obvious that even a layman

would recognize the condition; (3) a doctor could completely deny care even though he observes

recognizable symptoms which could signal a medical emergency." 489 Fed. App'x 275, 280

(10th Cir. 2012) (citing *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006)). It is clear that the

first circumstance is not present here. There is no indication that Mr. Herrera realized he was

unable to treat Mr. Atchison, nor that he failed to refer other staff to Mr. Atchison's condition in

a timely manner. However, the second circumstance is much closer. Defendants appear to assert

that this second circumstance requires that the medical condition be so obvious that a layman

would recognize "that Decedent had ingested a lethal dose of methamphetamine." (**Doc. 57**, at

6). However, to require the layman to be able to conduct a proper *diagnosis* of the cause of the

symptoms overstates the circumstance. Other case law in the prison-medical context words the

circumstance as "so obvious that even a lay person would easily recognize the necessity for a

doctor's attention." *Oxedine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Plaintiff does not

have to allege that a layman would obviously recognize that Mr. Atchison was overdosing on

methamphetamine; rather, that a layman would obviously recognize that Mr. Atchison had a

medical condition or required a doctor's attention. Mr. Atchison was sweaty, tachycardic, and

non-responsive to Mr. Herrera's questions. MDC staff placed Mr. Atchison on the floor to

prevent him from falling out of a seat. Mr. Atchison had difficulty opening his eyes and had to be

supported while his booking photograph was taken.

Given Mr. Atchison's symptoms, Plaintiff has plausibly alleged that a layman would

obviously recognize that Mr. Atchison was suffering from a medical emergency. The Court also

finds that Plaintiff has plausibly alleged that Mr. Herrera failed to treat Mr. Atchison's medical

condition. Mr. Herrera took Mr. Atchison's vitals and determined that he was tachycardic.

However, Mr. Herrera took no further steps other than to inform the night shift staff as to Mr.

Atchison's condition. Defendants argue in their Reply that Mr. Herrera was merely a

"gatekeeper," citing to *Mata v. Saiz*, 427 F.3d 745, 759 (10th Cir. 2005). In *Mata*, a registered

nurse "fulfilled her gatekeeper duty by reporting Ms. Mata's symptoms to a nurse practitioner."

*Id*. Similarly, Defendants argue that Mr. Herrera fulfilled his duty as a gatekeeper by completing

the intake examination of Mr. Atchison and then reporting his symptoms to the night shift. The

problem with Defendants' argument is that in *Mata*, the healthcare provider's policy stated that a

registered nurse was not a "medical provider," and that upon a patient complaining of chest pain,

the registered nurse was required to notify a physician, physician assistant, or nurse practitioner

of the symptoms. *See id*. at 757. Defendants make no argument that Mr. Herrera's duty as a

paramedic extended only to reporting symptoms to the night shift nurses, or that he is not

considered to be a medical provider. Thus, the Court finds that Plaintiff has plausibly alleged that

Mr. Herrera could be liable for deliberate indifference under both the second and third

circumstance from *Heidtke*.

Turning to qualified immunity, Plaintiff relies on *Richardson v. McKnight*, 521 U.S. 399 (1997) in support of their argument that Ms. Downing and Mr. Herrera are not entitled to qualified immunity. In *Richardson*, the Supreme Court held that prison guards employed by a privately run prison facility were not entitled to qualified immunity. *See id.* at 412. Defendants note that *Richardson* was to be applied narrowly "in the context in which it arose." *See id.* at 400. Defendants argue that *Filarsky v. Delia*, 132 S. Ct. 1657 (2012) has settled the question and clearly shows that private employees providing professional services, such as CHC, are protected by qualified immunity. *See id.* at 1667. *Filarsky* involved a city's one-time retention of a private attorney to help perform an administrative investigation because it lacked a qualified employee to perform the task. *See id.* at 1660. It did not involve a long-term contract or a corporation seeking qualified immunity. Further, *Filarsky* makes clear that *Richardson* still applies in "the particular circumstances of that case—'a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertak[ing] that task for profit and potentially in competition with other firms . . . .'" *Id.* at 1667. CHC is a private corporation which has a contract to perform a major and lengthy task for Bernalillo County with limited supervision. Based on the rationale articulated in *Richardson* and *Filarsky*, the Court finds that Ms. Downing and Mr. Herrera should not be permitted to raise the defense of qualified immunity.

**II.      Motion for Judgment on the Pleadings as to Counts III, IV, V, and VII (Doc. 54)**

Counts III and IV of Plaintiff's Complaint assert claims for medical negligence and ordinary negligence. The elements of both require the standard elements of negligence: that the defendant owed the plaintiff a duty recognized by law, the defendant breached the duty by departing from the proper standard of medical practice recognized in the community, and that the

acts or omission complained of proximately caused the plaintiff's injuries. *See Blaukamp v. Univ. of N.M. Hosp.*, 114 N.M. 228, 231 (1992). Defendants argue that Plaintiff has not stated facts that would indicate that Ms. Downing had a duty of care to Mr. Atchison. Plaintiff's sole allegation that Ms. Downing had contact with Mr. Atchison was that she was "on-call" for a brief period of time, which is insufficient to create a duty of care. Defendants point to a New Mexico Court of Appeals decision granting summary judgment to a pharmaceutical consultant hired to monitor prescriptions at a nursing home. *See Thompson v. Potter*, 268 P.3d 57 (N.M. Ct. App. 2011). A nurse incorrectly transcribed a prescription, leading to a patient's seizure. *See id.* at 63. The court held that as the consultant had no control over the nurse and had not visited the facility after the prescription was changed, she owed no duty to the patient. *See id.* Similarly, in *Estate of Harr v. Ulwelling*, the court held that a psychiatrist had no duty to prevent the suicide of a former patient after the psychiatrist-patient relationship had ended. *See* 141 N.M. 252, 257–58 (N.M. Ct. App. 2007). Defendants argue that Ms. Downing's connection to the care of Mr. Atchison is even more tenuous than that found in *Thompson* and *Harr*, as the medical providers there had at least some connection with the plaintiff. Similarly, while Defendants concede that Plaintiff may have alleged facts to indicate that Mr. Herrera had a duty of care to Mr. Atchison, Defendants argue that Mr. Herrera fulfilled that duty in its entirety. Plaintiff has not alleged that Mr. Herrera breached his duty by departing from the proper standard of medical practice, nor that Mr. Herrera proximately caused Mr. Atchison's death. Thus, Counts III and IV must be dismissed against Ms. Downing and Mr. Herrera.

Plaintiff responds that as a medical provider at the MDC, Ms. Downing owed a duty to apply the skill and care ordinarily used by reasonably well-qualified providers to Mr. Atchison once she learned of his dire medical condition. She further owes the duty to provide adequate

healthcare to a prisoner and the duty of reasonable care. Plaintiff argues that the cases cited by

Defendants involved attempts to ascribe a duty to a provider both physically absent and

contractually unrelated to the patient's case. By contrast, Ms. Downing was on-duty as a nurse at

the MDC and knew that Mr. Atchison was experiencing a medical emergency. This knowledge

of his condition while on-duty renders it more than plausible that she owed a duty to Mr.

Atchison. Turning to Mr. Herrera, Plaintiff argues that it was obvious to Mr. Herrera that Mr.

Atchison was suffering from a medical emergency and needed medical treatment. It is thus

plausible that Mr. Herrera breached his undisputed duties of care as he knowingly disregarded

the excessive risk to Mr. Atchison's health by failing to have him transported to the hospital or

otherwise ensuring he received medical treatment.

  The Court finds that Plaintiff has plausibly alleged that Ms. Downing owed a duty of care

to Mr. Atchison and that Mr. Herrera breached his duty of care to Mr. Atchison. As one of two

medical providers on staff at the time when Mr. Atchison was present, and with the knowledge

that Mr. Atchison had ingested an unknown quantity of an unknown drug and was non-

responsive, Plaintiff has sufficiently alleged that Ms. Downing owed a duty of care to Mr.

Atchison. Plaintiff has also sufficiently alleged that Mr. Herrera breached his duty of care to Mr.

Atchison by failing to have him transported to the hospital or otherwise ensuring that he receive

medical treatment.

  Defendants next argue that Count V, Plaintiff's claim for punitive damages, must be

dismissed, as Plaintiff is not entitled to compensatory or nominal damages. *See* N.M. CIV. U.J.I.

13-1827. As the Court has determined that both Ms. Downing and Mr. Herrera will remain as

Defendants, Defendants' argument that Plaintiff is not entitled to damages is premature.

Regardless, a Motion to Dismiss under Rule 12(b)(6) tests the sufficiently of a claim, not a prayer for relief.

Defendants finally argue that Count VII, Plaintiff's claim for loss of chance, must be dismissed, because as Plaintiff has not stated a claim for negligence, he cannot state a claim for loss of chance. *See Alberts v. Schultz,* 975 P.2d 1279, 1282 (N.M. 1999) ("[A] claim for loss of chance is predicated upon the negligent denial by a healthcare provider of the most effective therapy for a patient's presenting medical problem."). As the Court has determined that Plaintiff has plausibly alleged a claim for negligence, his claim for loss of chance may remain. Regardless, the Court reads *Alberts* to state that loss of chance involves negligence by the healthcare provider in not choosing the most effective therapy, such as "an incorrect diagnosis, [or] the application of inappropriate treatments," rather than requiring the Plaintiff to first prove negligence in order to prove loss of chance. *Id*. at 1282. Thus, the Court finds that Plaintiff's loss of chance claim remains.

**IT IS THEREFORE ORDERED** that, for the reasons stated herein, Defendants' Partial Motion for Judgment on the Pleadings as to Count I (Doc. 44)  is hereby **DENIED**.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, Defendants' Partial Motion for Judgment on the Pleadings as to Counts III, IV, V, and VII is hereby **DENIED**.

_____
UNITED STATES DISTRICT JUDGE